# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

FELISHA SKIPPER-LEACH,　　　　　：

　　　　Plaintiff,　　　　　　　：　　Case No. 3:11cv00325

　vs.　　　　　　　　　　　　：　　District Judge Walter Herbert Rice
　　　　　　　　　　　　　　　　　　Chief Magistrate Judge Sharon L. Ovington

MICHAEL J. ASTRUE,　　　　　　：
Commissioner of the Social
Security Administration,　　　　：

　　　　Defendant.　　　　　　：

## REPORT AND RECOMMENDATIONS[1]

## I.　　INTRODUCTION

　　　　Plaintiff Felisha Skipper-Leach brings this case *pro se* challenging the Social Security Administration's denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  This Court has jurisdiction to review the administrative denial of Plaintiff's applications.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Response and "Missing Medical Objective Evidence" (Doc. # 16), the administrative record (Doc. #7),

---

　　　[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

and the record as a whole.

Plaintiff seeks an award of DIB and SSI. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

### A.    <u>Procedural History</u>

Plaintiff filed DIB and SSI applications in January 2007, asserting that she was under a "disability" within the meaning of the Social Security Act.  (*PageID##* 201-12). She alleged that her disability consisted of a combination of medical problems including bipolar disorder, depression, osteoarthritis, asthma, anxiety, degenerative joint disease, hypertension, high cholesterol, chest pain, two cysts on her spine, and gastroesophageal reflux disease ("GERD").  (*PageID#* 265).  She identified January 1, 2004, as the date her disability began.  (*PageID#* 259).  From then on, according to Plaintiff, her disability prevented her from working.

Following initial administrative denials of her applications, Plaintiff received a video conference hearing before Administrative Law Judge (ALJ) Janice M. Bruning. (*PageID#* 75-103).  Plaintiff was represented by counsel during the hearing, and she testified regarding her impairments.

After the hearing ended, ALJ Bruning issued a written decision concluding that Plaintiff was not under a disability within the meaning of the Social Security Act, and was consequently not eligible to receive DIB or SSI.  (*PageID##* 112-22).  ALJ Bruning's written decision is at issue in the present case.

2

B.    **Plaintiff And Her Testimony**

Plaintiff was age thirty-five on the alleged disability onset date.  She was consequently considered a "younger person" for purposes of resolving her DIB and SSI applications.  (*PageID#* 120).  She has a high school education and earned a cosmetology certificate and licensed practical nurse ("LPN") certification.  (*PageID#* 271).  Her past jobs involved work as a certified nursing assistant and LPN.  (*PageID#* 266).

During the ALJ's hearing, Plaintiff testified that she has six children between the ages of 5 and 19.  (*PageID#* 78).  She testified that she last worked as a LPN from October 2006 until early 2007.  (*PageID#* 81).  She stated she was fired from this job after having back problems, and "clashes" with her supervisors.  (*PageID#* 81-82).

Plaintiff discussed the pain in her back and down her legs, as well as the swelling and pain in her ankles.  (*PageID#* 82).  She has never had surgery on her back, but stated she has been told she needs surgery.  (*Id.*).  She also discussed breathing difficulties and states that she needs to use an inhaler 3-4 times per day (both Albuterol and Advair).  She testified she would sometimes use a nebulizer with breathing treatments during flare-ups.  (*PageID#* 83).

From a mental health standpoint, Plaintiff testified that she sees a mental health specialist once per month for treatment for depression, anxiety, and severe mood swings.  (*Id*).  She claimed to have a lot of crying spells; experienced nervousness; felt scared; had low self-esteem; had trouble focusing and concentrating; would wake up mentally in a fog; and had to make lists because she had trouble remembering things.  (*PageID#* 84).

3

She testified that she had problems with driving and is afraid to drive, although she does drive sometimes.  She stated, "I only drive to where I have to go" (such as to doctor's appointments).  (*PageID##* 85, 91).  Plaintiff also testified to being paranoid and having panic attacks every day.  (*PageID#* 86).

Plaintiff estimated that she could stand for about 10 minutes at a time, and could sit for no more than 20 or 30 minutes at a time.  (*PageID#* 87).  She testified she tries to lift no more than 15 or 20 pounds; does not regularly climb stairs; has problems with stooping, crawling, kneeling, and balancing; and sometimes holds onto the wall to balance herself as she walks.  (*Id.*).

Plaintiff acknowledged using a cane at home.  She said that she uses a cane for stability when she gets up to go to the bathroom.  She also explained that reaching over her head caused pain, but reaching in front of her was not a problem.  (*PageID#* 89).

She testified she runs her household from her bed, even cooking.  Her children bring her the pots and pans, which she prepares, and the children put them on the stove. Sometimes she uses her George Foreman® grill while in bed, which she acknowledged is a fire hazard. (*PageID#* 91).  She said that she would drive to the store "if I can make it," (but her mother would often do things like that for her) and she does everything in pain. (*PageID#* 92).  She would do dishes three at a time when she would get up from bed for bathroom breaks.  (*PageID#* 92-93).  She also stated she did laundry a little bit at a time; does not make the beds (her children would change her sheets); does not take out the garbage, vacuum, mop, dust, or sweep; and does not do yard work.  (*PageID#* 93).  She

testified she watches television and uses a laptop computer in bed. (*PageID#* 94-95). Plaintiff testified she does not attend church or participate in any club or organization. (*PageID#* 97). She stated she keeps her feet elevated "24 hours a day." (*Id.*). Plaintiff explained that her 5 year old twins have been trained to be on the same schedule as her, including sleeping at night, and spending the day in bed with her. (*PageID#* 95).

### C. <u>Vocational Expert Testimony</u>

The vocational expert testified that Plaintiff's past relevant work consisted of one occupation: licensed practical nurse. The VE stated this position is considered a skilled occupation with an exertional level of medium. The VE then testified that an individual of Plaintiff's age, level of education, and work experience, who can lift and carry ten pound occasionally and less than ten pounds frequently; stand and or walk a total of two hours during an eight hour-work day; sit at least six hours during an eight-hour work day; never climb ladders, rope or scaffolding; can occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel and crawl; who should avoid concentrated exposure to heights, moving machinery, and lung irritants; and only have occasional contact with co-workers, supervisors, and the public, is limited to unskilled, four step repeated, simple tasks. (*PageID#* 100-101).

The VE testified as to three positions which meet these specifications: sorter (of which there are 340 such jobs in the region), assembler (of which there are 408 such jobs in the region), and production worker (of which there are 410 such jobs in the region). (*PageID#* 101). The VE stated these occupations would remain even if the individual

needed to be allowed to use a cane for ambulation, use the non-dominant hand only frequently (rather than constantly), and need an at will sit/stand option.  (*Id.*).

### D.  <u>Medical Evidence</u>

Consulting physician Damian Danopulos, M.D., evaluated Plaintiff on June 26, 2007.  (*PageID#* 436-444). He noted she last worked as a LPN in February 2007, and complains of six major impairments: hypertension, effort related shortness of breath with asthma, low back pain, entire joint pain, gastroesophageal reflux disease (GERD), and depression with anxiety.  (*PageID#* 436).  Dr. Danopulos noted that Plaintiff appeared with a cane, which she uses since May 2007 but is not obligatory.  He also noted that she presents as well developed; her intellectual functioning is consistent with her education; mental status was normal; moved in the examination room freely; dressed and undressed normally; and her remaining movements were normal.  (*PageID#* 438).  Dr. Danopulos noted that Plaintiff's upper and lower extremities revealed full range of motion; all joints in the upper and lower extremities revealed painless and normal motions; and she had normal gait without ambulatory aids.  Dr. Danopulos further noted that while spine was painful to pressure at the lumbosacral area, this was only a soreness, and Plaintiff "was getting on and off the examining table without difficulty."  (*Id.*).  He further opined that "[t]here was no evidence of nerve root compression or peripheral neuropathy."  (*Id.*). Ultimately, Dr. Danopulos found Plaintiff had poorly controlled hypertension; history of asthma with normal breathing capacity; lumbar spine arthralgias; neuralgias in the muscles of both arms and legs; history of gastroesophageal reflux disease and

6

circumstantial depression with anxiety neurosis. (*PageID#* 440).

On June 27, 2007, Plaintiff was evaluated by consulting psychologist Stephen Halmi, Psy.D. (*PageID##* 447-54).  Plaintiff reported to Dr. Halmi to being disabled from work due to bipolar disorder, depression, osteoarthritis, asthma, anxiety, degenerative joint disease, hypertension, high cholesterol, chest pain, two cysts on her spine, and GERD.  She also reported that she last worked for four hours as a LPN in February 2007, but stated she was in extreme pain and could not pick up enough shifts to meet the quota required to maintain the job and was terminated.  (*PageID#* 449).  After performing an interview and mental status examination of Plaintiff, Dr. Halmi stated that she presented as mildly depressed, and diagnosed depression with psychotic features; anxiety; pain disorder; and personality disorder.  (*PageID#* 453).  He ruled-out diagnosing her with somatoform disorder, bipolar disorder, and PTSD.  (*PageID#* 452).

Dr. Halmi opined that Plaintiff's mental ability to understand and remember simple one and two-step job instructions is judged to be intact without impairment; ability to attend, concentrate, and persevere on tasks is, based mainly on her self-report, seriously impaired; mental ability to get along with others, including coworkers, supervisors, and the general public as well as communicate effectively is moderately impaired; and her mental ability to manage the daily stressors associated with routine work is moderately impaired.  (*PageID#* 454).  Dr. Halmi recommended Plaintiff be assigned a payee if awarded benefits due to the fact she self-reported difficulty handling money.  (*Id.*).

7

On August 7, 2007, state agency psychologist Steven J. Meyer, Ph.D., reviewed the file and ultimately determined that Plaintiff is "capable of simple and moderately complex routine work, that [she] is motivated to perform, in [a] setting with regular expectations, occasional intermittent interactions with others and few changes." (*PageID#* 458).

On August 20, 2007, state agency physician Anton Freihofner, M.D., reviewed the file and assessed that Plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could only frequently stoop and crouch.  (*PageID#* 474-481).

On January 4, 2008, state agency physician Gary Hinzman, M.D., reviewed the file and affirmed Drs. Meyer and Freihofner's assessments from August 2007, indicating that Plaintiff could perform a range of unskilled, medium-level work.  (*PageID#* 577).

Plaintiff's family physician, Scott Shaw, M.D., completed a Basic Medical form for the Ohio Department of Job and Family Services in January 2008.  (*PageID#* 629-30). He opined that Plaintiff could stand/walk for no more than ½ hour in an eight-hour workday; could sit for no more than 1 hour in an eight-hour workday; and could lift/carry up to 6-10 pounds frequently.  (*PageID#* 630).  Dr. Shaw opined that Plaintiff's ability to push/pull, bend, reach, handle, and perform repetitive foot movements are extremely limited, and her ability to see, hear, and speak is not significantly limited.  (*Id.*).  He noted fibromyalgia, uncontrolled hypertension, and anxiety/depression as what led him to his

findings.  (*Id.*). On December 19, 2008, Dr. Shaw completed interrogatories and a medical assessment form relating to Plaintiff's physical ability to do work-related activities.  His December 2008 and January 2008 assessments largely set forth the same restrictions, however, whereas Dr. Shaw opined in the Basic Medical form completed in January 2008 that Plaintiff was "unemployable," he noted in the December 2008 assessment that Plaintiff has the residual functional ability on a sustained basis (in an eight-hour work day) to do sedentary work.  (*PageID#* 655).

Dr. Shaw opined in the interrogatories that Plaintiff has only a slight restriction of activities of daily living, but marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.   (*PageID#* 664-65).

On January 6, 2009, Plaintiff's treating pain specialist, Srinivas Erragolla, M.D., completed interrogatories.  (*PageID#* 667).  Dr. Erragolla opined that Plaintiff would not be able to perform a number of workplace functions, including sustaining attention and concentration to meet normal standards of productivity and accuracy; behaving in an emotionally stable manner; and accepting instructions and responding appropriately to criticism from supervisors.  (*PageID#* 667-676).  He also opined that Plaintiff had marked restrictions in maintaining social functioning and sustaining concentration, persistence or pace, but no restrictions in activities of daily living.  (*PageID#* 676).

In January 2009, Dr. Shaw sent a letter to Plaintiff's attorney and indicated that he believed Plaintiff to be "permanently and totally removed from all gainful employment."

(*PageID#* 724).

On January 14, 2010, Plaintiff's treating psychiatrist Rama Krishna Gollamudi, M.D., completed interrogatories and indicated that Plaintiff would not be able to perform a number of workplace functions, including sustaining attention and concentration to meet normal standards of productivity and accuracy; behaving in an emotionally stable manner; and accepting instructions and responding appropriately to criticism from supervisors. (*PageID#* 776-84).

## III. STANDARDS OF REVIEW

### A. <u>Administrative Review</u>

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Social Security Regulations ("SSR")

require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See PageID## 113-14; see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B.**    **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009);

---

[2]The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.  Plaintiff meets the insured-status requirement for DIB eligibility through June 2011.  *See Colvin*, 475 F.3d at 730; *see also PageID#* 114.

*see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.  DISCUSSION

### A.  <u>Plaintiff's Challenges to the ALJ's Decision</u>

Plaintiff contends that the ALJ's decision contains fifteen categories of misrepresentations and/or errors.  (Doc. #10, *PageID##* 817-24).  For the following reasons, Plaintiff's contentions fail to show that the ALJ did not apply the correct legal criteria or that the ALJ's findings were not supported by substantial evidence.

## 1.
## The ALJ's Sequential Evaluation

ALJ Bruning conducted the required five-step sequential evaluation of Plaintiff's disability status, and in doing so, she applied the correct legal criteria.  *See PageID##* 113-14.  ALJ Bruning concluded at Step 1 of the sequential evaluation that Plaintiff had not engaged in any substantial gainful activity after her claimed disability onset date. (*PageID#* 114).

The ALJ found at Step 2 that Plaintiff's severe impairments included "disc bulging in the thoracic spine, degenerative changes in the lumbosacral spine, asthma, left hand tremor, depression, and anxiety."  (*Id.*).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Social Security Regulation's Listing of Impairments.[3]  (*PageID#* 115).  The ALJ went on to find that Plaintiff's physical impairments neither met nor equaled an impairment in the context of categories 1.00 (musculoskeletal system) and 3.00 (respiratory system).  The ALJ found that Plaintiff's mental impairments neither met nor equaled an impairment under Listings

---

[3] The Listings appear in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

12.04 (affective disorders) and 12.06 (anxiety disorders) because the record did not

establish that Plaintiff's mental impairments met the "B" criteria of those Listings, nor did

they meet the "C" criteria of Listings. (*PageID#* 116).

At Step 4 the ALJ found:

> The claimant has the residual functional capacity to perform
> sedentary work[4] ... subject to the following additional limitations: avoid
> climbing ladders, ropes, and scaffolds, and avoid more than occasional
> climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and
> crawling. She must avoid concentrated exposure to hazards such as
> unprotected heights and dangerous moving machinery, and lung irritants.
> She can frequently (rather than constantly) use her nondominant left hand.
> She is restricted to jobs involving simple repetitive four step tasks involving
> no more than occasional contact with the general public, co-workers, and
> supervisors.

(*PageID#* 116) (footnote added). The ALJ also found at Step 4 that Plaintiff was unable

to perform her past relevant work as a LPN. (*PageID#* 120). As to Plaintiff's credibility,

the ALJ stated, "I am not persuaded by the claimant's subjective allegations of pain and

functional loss, nor am I convinced that the claimant's intense episodes of pain have been

so frequent or long lasting that they have precluded all work at all exertional levels at all

times material to this decision." (*Id.*).

At Step 5 the ALJ concluded that Plaintiff could perform a significant number of

jobs available in the national economy. (*Id.*).

The ALJ's findings throughout her sequential evaluation led her to ultimately

---

[4] Under the Regulations, "Sedentary work as involving the ability to lift "no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools...." 20
C.F.R. § 404.1567(a).

conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (*PageID#* 120).

## 2.

## Dr. Shaw's Opinions

Plaintiff contends that the ALJ erred by failing to accept the opinions of her treating physician, Dr. Shaw. (Doc. #10 at *PageID*## 818-19).

In January 2008, Dr. Shaw opined that Plaintiff could stand/walk for no more than ½ hour in an eight-hour workday; could sit for no more than 1 hour in an eight-hour workday; and could lift/carry up to 6-10 pounds frequently. (*PageID#* 630). He also opined that Plaintiff's ability to push/pull, bend, reach, handle, and perform repetitive foot movements are extremely limited, but her ability to see, hear, and speak is not significantly limited. (*Id.*). He noted fibromyalgia, uncontrolled hypertension, and anxiety/depression as what led him to his findings. (*Id.*).

Almost a year later, in December 2008, Dr. Shaw completed interrogatories and a medical assessment form relating to Plaintiff's physical ability to do work-related activities. In the interrogatories, Dr. Shaw opined that Plaintiff has only a slight restriction of activities of daily living, but marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (*PageID#* 664-65). In January 2009, Dr. Shaw completed another Basic Medical form for the Ohio Department of Job and Family Services. (*PageID#* 742). In this assessment, Dr. Shaw opined that Plaintiff could

15

stand/walk for 2 hours in an eight-hour workday (1 hour without interruption) and also sit

for 2 hours in an eight-hour workday (1 hour without interruption).  He opined that

Plaintiff could lift/carry frequently up to 6-10 pounds.[5]  (*PageID*# 743).   A few months

thereafter, on February 5, 2009, Dr. Shaw wrote a letter to Plaintiff's attorney indicating

that in his opinion Plaintiff is permanently and totally removed from all gainful

employment.  (*PageID*# 724).

      Social Security Regulations and case law require ALJs to apply controlling weight

to a treating medical source's opinion when it is both well supported by medically

acceptable data and not inconsistent with other substantial evidence of record.  *See* 20

C.F.R. § 404.1527(d)(2); *see also Rabbers*, 582 F.3d at 660; *Rogers*, 486 F.3d at 242;

*Wilson*, 378 F.3d at 544.  If a treating medical source's opinion is not entitled to

controlling weight, it must be weighed under "a host of other factors, including the

length, frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any

other relevant factors." *Rogers*, 486 F.3d at 242.

      More weight is generally given to the opinions of examining medical sources than

is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. §

404.1527(d)(1).  However, the opinions of non-examining state agency medical

consultants have some value and can, under some circumstances, be given significant

---

[5] Plaintiff testified in May 2010 that she tries not to lift more than 15 or 20 pounds because she would be struggling.  (*PageID*# 88).

weight.  This occurs because the Commissioner views non-examiners "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1527(d), (f); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2-*3.

The ALJ ultimately found that the opinions of Dr. Shaw, as well as Plaintiff's treating pain management specialist, Dr. Erragolla, and psychiatrist, Dr. Gollamudi, lacked objective evidence supporting the limitations and restrictions cited therein. (*PageID#* 120).  After considering these "sympathetic opinions," the ALJ gave them little weight and noted that "[t]he doctors apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (*PageID#* 120).  In doing so, the ALJ did not err as a matter of law.  The Regulations permitted the ALJ to reject the opinions on these grounds.  *See* 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling 96-2p (in order to be entitled to controlling weight, a medical opinion must be rendered by a treating source, be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and also must not be inconsistent with other substantial evidence in the record).

Other than listing several diagnoses and noting Plaintiff's "pain," Dr. Shaw

17

provided no reasons in support of his opinions about Plaintiff's limited physical and mental abilities. *See PageID*# 724. Moreover, his opinions are internally inconsistent. For example, on a Basic Medical form he completed for the Ohio Department of Job and Family Services in January 2008, Dr. Shaw noted that Plaintiff was "unemployable," and would be so for twelve months or more. (*PageID*# 630). He also opined that Plaintiff had significant restrictions in her ability to stand/walk and sit: he believed that Plaintiff could only stand/walk for ½ hour in an eight-hour workday (only for ¼ hour without interruption) and could only sit for 1 hour in an eight-hour workday (only for ½ hour without interruption). (*Id.*).

Approximately a year later, in January 2009, Dr. Shaw opined in another Basic Medical form he completed for the Ohio Department of Job and Family Services that Plaintiff could stand/walk for 2 hours in an eight-hour workday and sit for 2 hours in an eight-hour workday. (*PageID*# 743). Moreover, shortly before this form was completed, Dr. Shaw completed another physical assessment form in December 2008. This time, Dr. Shaw opined that Plaintiff has the residual functional ability on a sustained basis (in an eight-hour workday) to do "sedentary" work.[6] (*PageID*# 655). Yet just a few months later, on February 5, 2009, Dr. Shaw wrote a letter to Plaintiff's attorney indicating that in his professional opinion, Plaintiff is permanently and totally removed from all gainful employment. (*PageID*# 724).

---

[6] Defined on the form as follows: "Sedentary work; that is, lift 10 lbs. maximal/or carry such articles as small tools. Such work involves primarily sitting but the individual can sit/stand and walking/standing is required only occasionally." (*PageID*# 655).

18

Plaintiff argues that the ALJ "purposely ignored" Dr. Shaw's opinion, yet the ALJ provided restrictions on Plaintiff's residual functional capacity which were warranted by the medical evidence. Substantial evidence supports the ALJ's decision to discount Dr. Shaw's opinions.

Dr. Shaw's opinions were also inconsistent with other substantial record evidence, including the assessments by Drs. Meyer and Freihofner. *See* 20 C.F.R. § 404.1527(d)(2), (4); *see also* Social Security Ruling 96-2p. On August 7, 2007, state agency psychologist Steven J. Meyer, Ph.D., reviewed the file and ultimately determined that Plaintiff is "capable of simple and moderately complex routine work, that [she] is motivated to perform, in [a] setting with regular expectations, occasional intermittent interactions with others and few changes." (*PageID# 458*). On August 20, 2007, state agency physician Anton Freihofner, M.D., reviewed the file and assessed that Plaintiff could lift and/or carry and push and/or pull up to 50 pounds occasionally and 25 pounds frequently; could stand and/or walk about 6 hours in an eight-hour workday; could sit about 6 hours in an eight-hour workday; and could only frequently stoop and crouch. (*PageID## 474-481*). State agency physician Gary Hinzman, M.D., reviewed the file on January 4, 2008, and affirmed Drs. Meyer and Freihofner's assessments from August 2007, indicating that Plaintiff could perform a range of unskilled, medium-level work. (*PageID# 577*).

As the ALJ reasonably noted, although Dr. Meyer and Dr. Freihofner were non-examining physicians, and therefore their opinions do not as a general matter deserve

as much weight as those of examining or treating physicians, the opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions. (*PageID#* 119).  Because the ALJ reasonably weighed these physicians' opinions regarding Plaintiff's abilities, and explained the weight given to their opinions, substantial evidence supported the ALJ's conclusion that Plaintiff could perform a range of sedentary work.

The ALJ considered the record evidence, including the record physicians' and psychologists' opinions, and reasonably concluded Plaintiff had the residual functional capacity to perform a range of sedentary work, except she must avoid climbing ladders, ropes, and scaffolds, and avoid more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling.  (*PageID#* 116).  The ALJ also included in Plaintiff's RFC that she must avoid exposure to heights, moving machinery, and lung irritants; can frequently (rather than constantly) use her non-dominant left hand; and is restricted to jobs involving simple repetitive four step tasks involving no more than occasional contact with the general public, co-workers, and supervisors.  (*Id.*).

The ALJ was not required to grant significant weight to Dr. Shaw's opinion because it was not supported by objective medical findings and was also inconsistent.  It is within the ALJ's discretion to weigh the record physician opinions.  *See* 42 U.S.C. § 405(g); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)(ALJ not bound by treating physicians' opinions, especially where there is substantial evidence to the contrary); *Mullins v. Sec'y of Health & Human Servs.*, 836

F.2d 980, 984 (6th Cir. 1987)("claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings").

**3.**

**Plaintiff's Step 2 Arguments**

20 C.F.R. 404.1520(c) and 416.920(c) explain that a "severe impairment" refers to an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." The "severe impairment" determination at step two of the sequential analysis has been characterized as a "*de minimis* hurdle." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."); 20 C.F.R. § 404.1521(a). Although "in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation.... the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

Plaintiff argues that the ALJ erred in finding that Plaintiff does not suffer from an additional and significant work-related limitation of function because the record reflects that she in fact has a number of additional severe impairments. Plaintiff contends that the ALJ erred by failing to find that her fibromyalgia is a severe impairment. According to Plaintiff, the ALJ "failed to discuss my Fibromyalgia (FM) properly." (Doc. #10 at

*PageID#* 818).  Plaintiff argues that she has been diagnosed with fibromyalgia, citing to a subjective pain chart she completed as part of a patient evaluation form.  *See PageID#* 717.  The record does reflect, and the ALJ noted, that a rheumatologist in August 2007 gave Plaintiff a "working diagnosis" of fibromyalgia given Plaintiff's complaints of sleep disturbance and history of anxiety/depression.  *See PageID#* 622.  However, as the ALJ found, "a majority of exam findings at the time were normal."  (*PageID#* 118, citing 510-12).

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.  *Rogers,* 486 F.3d at 243, citing *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). Fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion.  *Rogers, supra.*  The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials.  *Id.* (citation omitted).  Of course, the presence of a diagnosis alone is never conclusive evidence of disability.  *See, Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146 (6th Cir. 1990). The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes.  (*Id.*).

Although there may be evidence in the record to support a conclusion that Plaintiff does suffer from additional severe physical impairments, the record evidence, including

22

that which the ALJ relied upon, reflects that substantial evidence also supports the opposite conclusion. "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Rogers*, 486 F.3d at 241 ("In deciding whether to affirm the Commissioner's decision, it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record.").

Moreover, where the ALJ determines that a claimant had a severe impairment at Step 2 of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, No. 02-2335, 73 F. App'x 801, 803 (6th Cir. Aug. 11, 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).  In this case, even if the ALJ improperly determined Plaintiff's fibromyalgia as not severe, she nonetheless considered its limiting effects on Plaintiff throughout her analysis.  *See, e.g.,*

23

*PageID#* 117 ("The claimant alleges that she is prevented from working by pain,

fibromyalgia, anxiety, and depression, which keep her in bed 90% of the time.").

## 4.

## Remaining Contentions

Plaintiff challenges the ALJ's failure to acknowledge that Plaintiff had her cane

with her at the administrative hearing.  During the hearing, the ALJ asked the vocational

expert what effect the use of a cane would have on the various jobs which were available

to Plaintiff, such as a sorter, assembler, and production worker.  The vocational expert

testified that these "occupations remain."  (*PageID#* 101).  This contention lacks merit

because Plaintiff has not shown that the ALJ's assessment of her residual functional

capacity was based on legal error or unsupported by substantial evidence.  As a result, the

vocational expert's testimony addressing a hypothetical person needing the use of a cane

and which incorporated the ALJ's residual functional capacity, *see PageID#* 101,

constituted substantial evidence to support the ALJ's conclusion at step 5 of the

sequential analysis.  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (*citing*

*Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987) ("Substantial

evidence may be produced through reliance on the testimony of a vocational expert....")).

The ALJ also evaluated Plaintiff's credibility as required by the Regulations.  *See*

20 C.F.R. § 404.1529(c).  The ALJ noted that Plaintiff's allegations that she is bed-ridden

are inconsistent with the objective medical evidence: there are several inconsistencies

between her extreme allegations and record evidence showing normal functioning or only

24

mild-to-moderate limitations. (*PageID##* 118-19). In fact, Dr. Shaw opined Plaintiff only had slight restrictions of activities of daily living, (*PageID#* 630), and Dr. Erragolla concluded Plaintiff had no restrictions in activities of daily living. (*PageID#* 676).

Although giving such an observation only slight weight regarding Plaintiff's credibility, the ALJ also found that Plaintiff "betrayed no evidence of pain, discomfort, or imbalance while appearing and testifying at the hearing." (*PageID#* 118). The ALJ also noted that when examined by Dr. Danopulos in June 2007, she told him the cane was not obligatory, and "moved freely in the examination room, she got on and off the examination table without difficulty, and she could dress and undress normally." (*PageID#* 118). The ALJ further found that the record indicates that she has not always been compliant in taking her medications, citing to numerous instances in the record where Plaintiff stopped taking her medication or changed dosages. *See PageID#* 119. Plaintiff has not offered information or argument sufficient to overcome the deference due to the ALJ's reasonable credibility determination. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (if supported by substantial evidence, ALJ''s credibility determination entitled to "great weight and deference....").

Accordingly, for the above reasons, the ALJ applied the correct legal criteria to the evaluation of the record and Plaintiff's disability status and substantial evidence supports the ALJ's findings.

**B.    Plaintiff's Additional Evidence**

Plaintiff submitted additional evidence in this case, specifically, ECG results from

2012 and hospitalization records from 2005.  (Doc. #16, *PageID##* 855-1031).  Plaintiff's additional evidence was not, therefore, part of the record on which the Commissioner's final decision was based, and, consequently, it is not considered to be part of the administrative record for the purpose of judicial review.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1992); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).

The United States Court of Appeals for the Sixth Circuit has held that evidence submitted in the first instance to the District Court may only be considered in determining whether remand is appropriate pursuant to sentence six of § 405(g).  *Casey*, 987 F.2d at 1233; *see Cotton*, 2 F.3d 692; *see also Wyatt*, 974 F.2d at 685.  An outright reversal of the ALJ's decision cannot be based on evidence which was not available at the administrative hearing.

A sentence six remand is warranted only upon a showing that the evidence is new, material, and that there is good cause for failure to incorporate the evidence into the record at the administrative hearing.  *Casey*, 987 F.2d at 1233; *see Wyatt*, 974 F.2d at 685.

A sentence six remand is not warranted in this case.  The majority of the records submitted are from a five week hospitalization in January and February 2005 when Plaintiff was hospitalized due to complications from her pregnancy with twins.  *See* Doc. 16, *PageID##* 880-1031.  And even if the ALJ had reviewed evidence, there is no reasonable probability that he would have changed his decision that Plaintiff was not

26

disabled based on evidence of this hospitalization. This additional evidence is, therefore, not material. *See Foster v. Halter*, 279 F.3d 348, 358 (6th Cir. 2001) (evidence not material where plaintiff "has not established that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with this evidence.")

Plaintiff attached additional evidence to her brief in this case (Doc. #16), which post-dates the ALJ's decision issued on July 20, 2010. (*PageID#* 122). The remaining exhibits include:

- February 22, 2012 ECG which showed possible left atrial enlargement with St deviation and moderate T-wave abnormality. (Doc. # 16 at *PageID#* 856);

- August 7, 2012 ECG which was listed as "abnormal." (*PageID#* 857);

- August 14, 2012 echocardiogram which showed normal aortic root and aortic valve morphologies; normal left atrial size without any evidence of intracardiac thrombus; mild left ventricular hypertrophy with uniform contractility with a normal ejection fraction; normal mitral and tricuspid valve morphologies; trivial mitral, tricuspid and pulmonary regurgitation with evidence of pulmonary hypertension. Compared to previous echocardiogram of 2005, there is no significant change noted other than the mild left ventricular hypertrophy. (*PageID##* 858-59).

- Hospitalization from February 22, 2012 (*PageID##* 860-78), which included an ultrasound of Plaintiff's abdomen which showed no evidence of any gallstones, although there is some minimal sludging of bile in the gallbladder; no free fluid is seen; and no evidence of an abdominal mass. (*PageID##* 860-61); and results from February 24, 2012 esophagogastroduodenoscopy, which showed mild antral gastritis with erosions and fundic diverticulum. (*PageID##* 863-64).

Even providing Plaintiff's contentions, raised *pro se*, with the utmost of

27

consideration, the above evidence simply does not provide further information regarding her condition during the relevant period and is therefore not material.  *See Wyatt*, 974 F.2d at 685 (evidence of subsequent deterioration or change in condition after the administrative hearing is deemed immaterial); *see also Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) (evidence which reflects aggravated or deteriorated condition not relevant because does not demonstrate point in time when disability began).

### C.   <u>Summary</u>

In conclusion, the ALJ reasonably found that Plaintiff could perform a limited range of sedentary work.  The ALJ further found that, consistent with those work-related limitations and the vocational expert's testimony, Plaintiff could perform other jobs in the national economy and, as a result she was not under a "disability" as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520(g) (If a claimant can make an adjustment to other work, they are considered "not disabled" ).

Accordingly, Plaintiff's Statement of Errors lacks merit.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be affirmed; and

2.      The case be terminated on the docket of this Court.

February 11, 2013

_____s/Sharon L. Ovington_____
Sharon L. Ovington
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(c), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).